UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

      - against -              :     **MEMORANDUM DECISION**

EMMANUEL ABIODUN et al.,          :     04 Cr. 1316 (DC)

              Defendants.   :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    MICHAEL J. GARCIA, Esq.
                  United States Attorney for the
                    Southern District of New York
                      By: Marcus A. Asner, Esq.
                         Jessica A. Mordas, Esq.
                         Assistant United States Attorneys
                  1 St. Andrew's Plaza
                  New York, NY  10007

                  ANDREW H. FREIFELD, Esq.
                  Attorney for Defendant Abiodun
                  30 Vesey Street, 6th Floor
                  New York, NY  10007

**CHIN, D.J.**

        On December 16, 2004, government agents seized evidence from a storage unit, leased by defendant Emmanuel Abiodun, at Third Avenue Self-Storage Inc., located in Bronx County, New York, in connection with an identity theft investigation. On December 22, 2004, law enforcement agents arrested Abiodun at the storage facility. He has been indicted for conspiracy, identity theft, and possession of access devices. Abiodun moves to suppress the items seized from the storage unit, claiming a violation of his Fourth Amendment rights. For the reasons that follow, the motion is denied.

**STATEMENT OF THE CASE**

**A.   The Facts**

The following constitute my findings of fact:

During his investigation in this case, James R. Antonino, an Inspector with the United States Postal Inspection Service, learned from a confidential informant that Abiodun kept a storage locker at Third Avenue Self-Storage, Inc. ("Third Avenue"), in the Bronx. (Antonino Decl. ¶ 5). Abiodun had been leasing storage unit 157 (the "Unit") under the name "Awudu Kano" since March 1, 2002, storing items in the Unit and placing his own lock on the door. (9/11/05 Abiodun Decl. ¶ 2; 5/26/05 Abiodun Decl. ¶¶ 2,3; Antonino Decl. ¶ 7). On December 16, 2004, Antonino and two other agents visited Third Avenue. (Antonino Decl. ¶ 6).

When the agents arrived, the Third Avenue manager provided them with a copy of a driver's license in the name of "Awudu Kano," with a photograph that appeared to be Abiodun. (Id. ¶ 6, Ex. B). Antonino had learned in the course of his investigation that Abiodun had at times used the alias "Awudu Kano" and had registered a vehicle in that name. (Antonino Decl. ¶ 4). The manager informed the agents that "Kano" had rented the Unit and was in arrears of $381.50 on his rental payments, Third Avenue had the contractual right to open the Unit and seize its contents, and Third Avenue planned to auction the contents on January 3, 2005. (Id. ¶¶ 7, 8). The manager supported these statements with computer screen printouts that showed the account

for the Unit was in "delinquency" for a period of more than three months, an "overlock" had been placed on the Unit by employees, to prevent Abiodun's access, and the Unit had been "added to the next auction."  (Id. ¶ 8, Ex. A).[1]

The manager told the agents that he or she had authority to enter the Unit and gave them express consent to search it.  The manager instructed another Third Avenue employee to open the Unit, by breaking the lock, and the agents conducted a search.  They seized a number of items, including a large screen television and hundreds of documents, which are the subject of this suppression motion.  (Antonino Decl. ¶ 9; Freifeld Decl. ¶¶ 11-13; 5/26/05 Abiodun Decl. ¶ 7).

Abiodun was arrested at Third Avenue on December 22, 2004.  In an affidavit in support of his motion, Abiodun states:

> I kept a lock on the door of the . . . [U]nit

---

[1] The printouts also showed multiple attempts by the storage facility to notify "Awudu Kano" of the actions taken on his account by telephone and through the issuance of a printed "Lien Law Notice," which warned: "Access to your Unit is hereby revoked.  The facility will sell the entire contents of your Unit to satisfy the Lien unless you pay the balance due in CASH." (Antonino Decl. Ex. A).  The printouts indicated that the telephone line was disconnected in November.  (Id.).  Abiodun claims that he never received any notice and that his phone was not disconnected at that time.  (9/11/05 Abiodun Decl. ¶¶ 8, 9). Abiodun objects to the Court's consideration of the documents provided by the government in their Exhibit A as lacking an adequate foundation.  This objection is overruled to the extent that a proper foundation has been laid as to the existence of the documents: the manager printed out the computer records in Antonino's presence and gave them to him.  (Antonino Decl. ¶ 8). For purposes of this motion, however, I assume Abiodun did not receive notice and his phone was not disconnected.  His failure to receive written notice is not surprising, given that he used a false name to open the account.

> from on or about March 1, 2002, to on or about December 22, 2004, when I was arrested in this case. I believed that the lease was in effect from March 1, 2002, to the date of my arrest. On the date of my arrest, I received a telephone call from an employee of the facility informing me that the lock on the [U]nit had been broken. I arrived at the facility to investigate and was arrested on this case. I stored items in the . . . [U]nit and placed a lock on its door with the belief that the items would be neither seen nor possessed by any government agent. I have never authorized any government agent to enter that facility for any purpose whatsoever.

(5/26/05 Abiodun Decl. ¶¶ 3-6).

**B. Prior Proceedings**

Abiodun was indicted December 13, 2004, on one count of conspiracy, one count of identity theft, and one count of possession of access devices. This motion followed. On October 5, 2005, the Court heard argument from both sides and reserved decision. No testimony was taken. Abiodun's counsel thereafter submitted an additional letter.

### DISCUSSION

**A. Standing**

**1. Applicable Law**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend IV; see also Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 619 (1989); United States v. Blue, 78 F.3d 56, 59 (2d Cir. 1996). To assert a Fourth Amendment violation, a defendant must first demonstrate standing by establishing a legitimate

expectation of privacy in the area searched or the items seized. Rakas v. Illinois, 439 U.S. 128, 143 (1978); United States v. Chuang, 897 F.2d 646, 649 (2d Cir. 1990). The defendant must prove both that he had a subjective expectation of privacy in the area searched and that society is "prepared to accept that expectation as objectively reasonable." California v. Greenwood, 486 U.S. 35, 39-40 (1988); see also United States v. Paulino, 850 F.2d 93, 97 (2d Cir. 1988). The Second Circuit has often considered the defendant's right of exclusive access to an area to be an "important factor" in this standing determination. See United States v. Rahme, 813 F.2d 31, 34 (2d Cir. 1987) (citing Rawlings v. Kentucky, 448 U.S. 98, 105 (1980), and Rakas, 439 U.S. at 143 n.12); see also Gudema v. Nassau County, 163 F.3d 717, 722 (2d Cir. 1998) ("[M]ere ownership of property does not establish a legitimate expectation of privacy unless the owner vigilantly protects the right to exclude others.").

The Second Circuit has not addressed the issue of a defendant's expectation of privacy in a storage unit or items stored therein. The closest analogy lies in the context of items seized from hotel rooms. In this setting, the Second Circuit has made clear that "when a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein." United States v. Rahme, 813 F.2d 31, 34 (2d Cir. 1987); see also United States v. Parizo, 514 F.2d 52, 54-55 (2d Cir. 1975); United States v. Cowan, 396 F.2d 83, 86-87 (2d Cir.

1968); accord Abel v. United States, 362 U.S. 217, 241 (1960). When a guest no longer has an "exclusive right" of access to the room, there can be no legitimate expectation of privacy. Rahme, 813 F.2d at 34; Parizo, 514 F.2d at 55; see also United States v. Brown, 961 F.2d 1039, 1041-42 (2d Cir. 1992) (noting that a tenant would plausibly have no expectation of privacy in an apartment after failure to pay rent for several months and legal eviction proceedings). Following this line of cases, at least one judge in this district has noted the similarity between the loss of expectation of privacy by a hotel guest and the renter of a storage unit after the rental term has expired, United States v. Miller, No. 96 Civ. 0412 (BSJ), 1997 WL 109565, at *1 (S.D.N.Y. Mar. 12, 1997), and another judge has held that a defendant lacked standing to challenge the search of a storage locker where his rental period had expired due to his default on monthly payments, United States v. Salameh, No. 93 Cr. 0180 (KTD), 1993 WL 364486, at *6-7 (S.D.N.Y. Sept. 15, 1993).

The Ninth and First Circuits have reached similar determinations in the context of rented storage units. In United States v. Poulsen, the Ninth Circuit concluded that a person has no "legitimate expectation of privacy in the contents of his locker after the manager of the storage facility seized the property because the rent was overdue." 41 F.3d 1330, 1331 (9th Cir. 1994). Operation of the storage facility's lien terminated the defendant's right of access to, and his legitimate expectation of privacy in, the contents of his locker. Id. at

1337 (relying in part on the Second Circuit's reasoning in Rahme).

Similarly, in United States v. Melucci, the First Circuit found that the defendant lacked standing to contest the search of a storage unit, based on his failure to pay rent coupled with the storage facility's act of removing the lock on the unit and taking possession under the lease terms. 888 F.2d 200, 202 (1st Cir. 1989). The panel also considered the defendant's use of a false name and address to rent the unit and the lease's termination two months prior to the search as factors against finding an expectation of privacy. Id.; cf. Salameh, 1993 WL 364486, at *5 (noting that "[i]t seems contrary to reason to let a person use an alias to hide his connection with leased property and yet maintain that he has standing to challenge a search of the premises").

In these cases, the courts' findings that the defendants no longer had expectations of privacy rested upon a number of factors, including failure to pay rent, expiration of the rental term, the lessor's execution of a lien or exercise of possession, notice to the defendant,[2] and whether the defendant had used an alias.

---

[2] In a related scenario, the Eighth Circuit has held that a defendant has no legitimate expectation of privacy in a public locker at a bus terminal when the search is conducted after the expiration of the rental term. United States v. Reyes, 908 F.2d 281, 285 (8th Cir. 1990). The court relied on the fact that "Reyes knew or should have known, after twenty-four hours[,] his items were removed by the company pursuant to the policy clearly printed on his locker." Id.

## 2. **Application**

The issue is whether Abiodun had a reasonable expectation of privacy in the Unit or the contents thereof at the time of the search. I hold that he did not. It is undisputed that Abiodun used a false name -- "Awudu Kano" -- and false identification to rent the Unit. He gave Third Avenue a driver's license bearing his photograph but with the name "Awudu Kano." See Salameh, 1993 WL 364486, at *5 (citing Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)) (noting how defendant's use of false identifying information diminished his privacy expectation). Abiodun had failed to pay rent on a month-to-month tenancy for three or four months. The contents had been scheduled for auction, and an overlock had been placed on the Unit, denying him access. Cf. Rahme, 813 F.2d at 34 (no legitimate expectation of privacy in room where defendant lacked "exclusive right of access"); Parizo, 514 F.2d at 55 (same). Under these circumstances, Abiodun's expectation of privacy at the time of the search is not one that society would be "prepared to accept as objectively reasonable." Greenwood, 486 U.S. at 39-40.

Abiodun argues that "a lessee who has failed to pay rent [on a self-storage unit] has abandoned an expectation of privacy in the unit only if the lessor has complied with applicable law to enforce a lien to [sic] the contents of the unit, including requirements of notice to the lessee." (9/12/05 Abiodun Letter, 2). Abiodun contends that because Third Avenue

did not properly enforce its lien by exercising "due diligence" to notify him in compliance with the New York Lien Law, he never lost his right to access the Unit and, thus, cannot be deemed to have abandoned his expectation of privacy therein. (9/12/05 Abiodun Letter, 5-6 (citing N.Y. Lien Law §§ 182, 201 (McKinney 1993))).

Defendant's reliance on the New York Lien Law is misplaced. Sections 182 and 201 govern a storage facility's ability to enforce a lien on the contents of a storage unit through a sale of the property; these sections do not address the issue of the lessor or lessee's right of access to the unit. N.Y. Lien Law §§ 182, 201 (McKinney 1993).[3] In this respect, Abiodun's reliance on United States v. Poulsen, 41 F.3d 1330, 1335-36 (9th Cir. 1994), is misplaced, for the New York Lien Law offers less protection than California law, which only permits a storage facility to terminate a lessee's right of access to a storage unit after providing proper notice. See California Business & Professions Code §§ 21702, 21703, 21705.

Accordingly, Abiodun no longer had a reasonable

---

[3] Section 182 reads in pertinent part: "An owner's lien may be enforced by public or private sale of the goods that have been removed from the storage space at a self-service storage facility . . . at any time or place and on any terms which are commercially reasonable after notice to all persons known to claim an interest in the goods." Indeed, the statute presupposes that the storage facility has access to the storage unit's interior as the contents may be "removed" prior to enforcement by "sale of the goods." To the extent that defendant alleges a violation of New York's Lien Law, his remedy is a cause of action against the lessor for damages -- not suppression of evidence of a crime found within the Unit. See N.Y. Lien Law § 182(4).

expectation of privacy in the storage unit at the time of the search, and thus he does not have standing to contest the search.

**B.   Consent**

Even assuming Abiodun has standing to contest the search, the motion to suppress fails on the merits, for clearly Third Avenue had the authority to, and did, consent to the search of the Unit.

   **1.   Applicable Law**

The Fourth Amendment's "central requirement is one of reasonableness."  Koch v. Town of Brattleboro, 287 F.3d 162, 166 (2d Cir. 2002) (quoting Illinois v. McArthur, 531 U.S. 326, 330 (2001)); see also Illinois v. Rodriguez, 497 U.S. 177, 185 (1990) (noting the standard is not that the determinations of government agents must "always be correct, but that they always be reasonable").  A warrantless search is per se unreasonable, unless it falls within one of the well-established exceptions to the warrant requirement; one such exception is a search conducted pursuant to voluntary consent by an authorized third party. United States v. Lewis, 386 F.3d 475, 481 (2d Cir. 2004) (citing Katz v. United States, 389 U.S. 347, 357 (1967)).

The Second Circuit has held that "'third party consent to a search will validate the search if two prongs are present: first, the third party had access to the area searched, and, second[, the third party had] . . . : (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access.'"  Koch, 287 F.3d at 167 (quoting

United States v. Davis, 967 F.2d 84, 87 (2d Cir. 1992)). Even where a third party lacks actual authority to provide consent, government agents may nonetheless rely on that consent so long as the "facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." Koch, 287 F.3d at 167 (quoting Rodriguez, 497 U.S. at 188) (internal quotation marks omitted); see also United States v. Perez, 948 F. Supp. 1191, 1201 (S.D.N.Y. 1996). This concept applies, however, only to a search based upon an agent's reasonable, though erroneous, belief as to a mistake of fact, and "would not validate . . . a search premised upon an erroneous view of the law." United States v. Brown, 961 F.2d 1039, 1041 (2d Cir. 1992).

   2.  **Application**

Here, the manager clearly was an authorized third party who gave consent, as the government has established both prongs of the test: access and authority.

As to the first prong, access, the manager clearly had access to the Unit. The Unit was one storage unit within a self-storage facility, and the Unit was part of the facility. Third Avenue had the ability to enter any unit merely by snipping the lessee's lock. Third Avenue could also control access, thereby excluding the lessee, merely by placing an overlock on a unit. Third Avenue also had the ability, under the terms of the lease agreement and the Lien Law, to seize the contents of units and sell them at auction.

Abiodun argues that the manager did not have access to the Unit because Third Avenue did not have a key to the Unit so that breaking Abiodun's lock was the only way to gain access. (11/8/05 Abiodun Letter, 2). The Second Circuit has rejected, however, the "strict view that access must mean physical access and not legal access." Ehrlich v. Town of Glastonbury, 348 F.3d 48, 60 (2d Cir. 2003) (rejecting notion that "forced entry into an occupied dwelling absent an emergency" might never satisfy the "joint access" requirement). Thus, the fact that Third Avenue did not have a key to the Unit does not preclude a finding of "access." Under all the circumstances here, Third Avenue did have access for these purposes.

As to the second prong, authority, Third Avenue clearly had common authority over the Unit and a substantial interest in it. Third Avenue owned the storage facility and leased the Unit to Abiodun on a month-to-month basis. When Abiodun failed to pay rent for three or four months, Third Avenue had the right -- and the authority -- to re-claim the Unit.

Even assuming the manager lacked actual authority to consent to a search of the Unit, the agents had a reasonable basis for believing the manager had such authority. The manager told the agents that "Kano" was in arrears, the contents were up for auction, and "Kano" had not responded to efforts to contact him. The manager printed out computer records to support these statements. The agents could see that Abiodun had given Third Avenue a false name and false identification to rent the unit.

The manager was able to direct an employee of the facility to cut the lock on the Unit. Under all these circumstances, the agents surely had a reasonable basis to believe that the manager was authorized to consent to a search.

Abiodun's argument that the government agents acted upon a mistake of law fails. (11/8/05 Abiodun Letter, 2). He contends that Third Avenue did not provide proper notice pursuant to the New York Lien Law -- notice he alleges was necessary to perfect Third Avenue's interest in Abiodun's property. Again, as discussed above, even assuming Third Avenue's lien on the contents was not perfected, the lien is relevant only to Third Avenue's ability to sell the property, not to its ability to enter the Unit. Under all the circumstances, it was clearly reasonable for the agents to believe that the manager had the authority to consent to the search. Cf. United States v. Brown, 961 F.2d 1039, 1041 (2d Cir. 1992) (invalidating a search where the facts "as [the officer] reasonably believed them to be" "could not provide the authorization necessary for a warrantless search"). Moreover, for the reasons discussed above, such notice was not in fact necessary to establishing Third Avenue's access to the Unit.[4]

---

[4] Abiodun also argues the government has not shown that the manager's consent was voluntary. The argument is rejected, for there is nothing in the record to suggest that the manager's consent was not voluntarily given.

## CONCLUSION

For the reasons set forth above, defendant's motion to suppress the contents of the Unit is denied.

SO ORDERED.

Dated: New York, New York
November 22, 2005

DENNY CHIN
United States District Judge